# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ASSOCIATION OF AMERICAN PHYSICIANS & SURGEONS, INC., | ) ) ) | |
| Plaintiff, | ) ) | No. 14-cv-02705 |
| v. | ) ) | Judge Andrea R. Wood |
| AMERICAN BOARD OF MEDICAL SPECIALITES, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Association of American Physicians & Surgeons, Inc. ("AAPS") has sued Defendant American Board of Medical Specialties ("ABMS"), alleging restraint of trade in violation of Section 1 of the Sherman Act and negligent misrepresentation in connection with ABMS's program for recertification known as the ABMS Maintenance of Certification® program. Before the Court is ABMS's renewed motion to dismiss both claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") (Dkt. No. 30). For the reasons stated below, the Court finds that AAPS has failed to state a claim with respect to either count and thus grants the Motion.

## BACKGROUND

As set forth in the Complaint,[1] AAPS is a membership organization of thousands of practicing physicians in virtually all specialties. (Compl. ¶ 4, Dkt. No. 1.) ABMS is a nonprofit entity that serves as the umbrella organization for twenty-four medical specialty boards (the "Member Boards"). (*Id.* ¶¶ 5, 11.) Each of the Member Boards certifies physicians in a given

---

[1] For purposes of deciding the Motion, the Court accepts the allegations of the Complaint as true and draws all permissible inferences in AAPS's favor. *See, e.g.*, *Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

medical specialty if the physician voluntarily seeks certification, completes an accredited medical residency program in the specialty, passes an examination administered by the Member Board, and otherwise complies with the Member Board's requirements for certification. (ABMS Br. at 1, Dkt. No. 31.) The Member Boards are to be distinguished from the official medical boards of the states, which determine the fitness of physicians to practice medicine. (Compl. ¶ 19, Dkt. No. 1.) Certification by a Member Board is a voluntary process and is not required to be licensed to practice medicine—a patient has the right to seek the medical care of any physician licensed to practice medicine (whether certified or not). (*Id*. ¶ 20.)

Although a physician certified by a Member Board was originally certified for life, ABMS and its Member Boards came to recognize the need for periodic recertification given that the state-of-the-art in each medical specialty evolved rapidly and a physician's knowledge of a particular specialty could deteriorate over time. (ABMS Br. at 2, Dkt. No. 31.) As such, in addition to initial certification, ABMS and its Member Boards offer a program for recertification known as the ABMS Maintenance of Certification® ("MOC") program. (*Id*.) Like certification, participation in the MOC program is not required in order to be licensed to practice. (*See* Compl. ¶ 20, Dkt. No. 1.) The MOC program has four basic components: (1) maintenance of a valid license to practice medicine and adherence to guidelines of the Member Board calling for professionalism and honorable personal conduct; (2) regular participation in educational and self-assessment activities that meet specialty-specific standards set by each Member Board; (3) successful completion of an examination; and (4) evaluation of the care provided to patients, and identification and application of strategies to improve that care. (ABMS Br. at 2–3, Dkt. No. 31; *see also* Compl. ¶ 34, Dkt. No. 1.)

In November 2009 and subsequently, ABMS and several Member Boards obtained the agreement of The Joint Commission, a private company that accredits more than 20,000 health care organizations and hospitals, that hospitals must enforce requirements against physicians for renewal of their medical staff privileges. (Compl. ¶¶ 13–14, Dkt. No. 1.) To comply with The Joint Commission's requirements, many hospitals impose parts or all of the MOC program against physicians as a condition of having hospital medical staff privileges. (*Id.* ¶ 15.)

The choice not to participate in the MOC program has affected physicians in the United States, including members of AAPS. (*Id.* ¶¶ 50–51.) For example, in 2011, an AAPS member identified as "J.E." was excluded from the medical staff of SMC, a hospital in New Jersey, because he chose not to participate in the MOC program. (*Id.* ¶¶ 29, 32, 43–44.) J.E. had been on the SMC medical staff for twenty-nine years and had been certified by a Member Board. (*Id.* ¶¶ 30–31.) He was told by SMC in 2011, however, that he would have to comply with recertification requirements under the MOC program to remain on its medical staff. (*Id.* ¶ 32.) Due to the expense and time required for recertification, J.E. chose not to comply. (*See id.* ¶¶ 34–43.) As a result, he was not allowed to remain on SMC's medical staff, and patients cannot be treated by J.E. when taken by emergency to SMC. (*Id.* ¶¶ 44–45.)

AAPS has filed a two-count Complaint alleging (1) restraint of trade in violation of Section 1 of the Sherman Act, and (2) negligent misrepresentation. With respect to Count I, AAPS alleges that ABMS has restrained trade in connection with the MOC program. (*Id.* ¶¶ 57–70.) In particular, AAPS claims that ABMS has restrained trade by: (a) seeking and obtaining agreements with the Member Boards to impose formal recertification requirements as part of the MOC program, (b) seeking and obtaining agreement by The Joint Commission to require enforcement by hospitals of formal recertification requirements, (c) inducing health insurance

companies and plans to exclude physicians who do not purchase and comply with the MOC program, (d) requiring recertification by younger physicians while exempting older physicians, and (e) acting in concert with the Member Boards to seek an endorsement by the Federation of State Medical Boards of "maintenance of licensure" to impose the MOC program as a requirement of licensure by state medical boards. (*Id*. ¶¶ 57–62.) AAPS argues that the relevant service market consists of medical care provided by physicians to hospitalized patients and that the relevant geographic market is nationwide. (*Id*. ¶¶ 27–28.) According to AAPS, ABMS's actions have no legitimate purpose, reduce the supply of physicians available to treat patients, and limit patients' access to their own physicians. (*Id*. ¶¶ 63–66.)

With respect to Count II, AAPS alleges that certain statements of ABMS are false and have deceived physicians and the public. (*Id*. ¶¶ 78–91.) The statements at issue consist of: (a) a statement on an ABMS website that doctors who participate in the MOC program "are voluntarily part of a rigorous process that continually assesses and enhances their medical knowledge, judgment, professionalism, clinical techniques, and communication skills;" (b) a statement on an ABMS website that "you can count on quality patient care" from doctors who are Board Certified; (c) ABMS's use of phrases such as "Not Meeting MOC Requirements" to describe physicians who do not participate in the MOC program, and (d) inviting patients to search on the names of individual physicians to see if they have complied with the MOC program. (*Id*. ¶¶ 78–81, 82.) AAPS argues that ABMS's statements "create the false impression that [the MOC program] is indicative of the medical skills of physicians, and that as a result physicians who decline to purchase [ABMS's] product are likely to be less competent" and "falsely imply[] that physicians who decline to participate or who do not fully complete the program are somehow less competent physicians." (*Id*. ¶¶ 81–82.)

4

**DISCUSSION**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). While the Complaint need not include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Id*. at 555. The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (internal citations and quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). In addition, "although the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *Id.* Furthermore, "a party may plead itself out of court by either including factual allegations that establish an impenetrable defense to its claims or by attaching exhibits that establish the same." *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006).

**I.     Count I – Restraint of Trade in Violation of Section 1 of the Sherman Act**

Section 1 of the Sherman Act states, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. To state a claim for a Section 1 violation, AAPS must plead facts plausibly suggesting: (1) a contract, combination, or conspiracy (*i.e.*, an agreement); (2) a resultant unreasonable restraint of trade in a relevant market; and (3) an

accompanying injury. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012). The Court's analysis focuses on the second and third factors.

### A. A Resultant Unreasonable Restraint of Trade in a Relevant Market

AAPS must sufficiently plead that ABMS's actions have caused an unreasonable restraint of trade in a relevant market. "[T]he determination of whether a restraint is unreasonable must focus on the competitive effects of challenged behavior relative to such alternatives as its abandonment or a less restrictive substitute." *Id.* (internal quotation marks and citation omitted). There are three categories of analysis that are used to determine whether actions have anticompetitive effects—*per se*, quick-look, and Rule of Reason. *Id.* Here, AAPS has alleged that ABMS's actions constitute a *per se* violation of the Sherman Act and that, alternatively, ABMS's actions constitute a violation of the Sherman Act under the Rule of Reason by unreasonably restraining competition in the relevant market (which ABMS alleges is medical care provided by physicians to hospitalized patients nationwide). (Compl. ¶¶ 27–28, 69–70, Dkt. No. 1.)

The *per se* rule "is employed when a practice facially appears to be one that would always or almost always tend to restrict competition and decrease output. . . . Under the per se framework, a restraint is deemed unreasonable without any inquiry into the market context in which the restraint operates." *Agnew*, 683 F.3d at 336 (internal quotation marks and citation omitted). By contrast, under the Rule of Reason framework,

> the plaintiff carries the burden of showing that an agreement or contract has an anticompetitive effect on a given market within a given geographic area. As a threshold matter, a plaintiff must show that the defendant has market power—that is, the ability to raise prices significantly without going out of business—without which the defendant could not cause anticompetitive effects on market pricing. If the plaintiff meets his burden, the defendant can show that the restraint in question actually has a procompetitive effect on balance, while the plaintiff can dispute this claim or show that the restraint in question is not reasonably necessary to achieve the procompetitive objective.

*Id*. at 335-36 (internal citations omitted).

### 1. *Per Se* Restraint of Trade

AAPS has alleged no facts supporting a *per se* restraint of trade, merely stating in a conclusory manner that ABMS's "agreements and concerted actions are a *per se* violation of Section 1 of the Sherman Act because they are plainly anticompetitive, like a group boycott of a supplier; [ABMS's] foregoing actions tend to restrict competition and decrease output with respect to medical services in the relevant market." (Compl. ¶ 69, Dkt. No. 1.) AAPS has not alleged any type of agreement suggesting a *per se* unlawful restraint, such as a horizontal agreement among competitors to fix prices or to divide markets. *See Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) ("Restraints that are *per se* unlawful include horizontal agreements among competitors to fix prices, or to divide markets. Resort to *per se* rules is confined to restraints, like those mentioned, that would always or almost always tend to restrict competition and decrease output. To justify a *per se* prohibition a restraint must have manifestly anticompetitive effects and lack ... any redeeming virtue") (internal citations and quotation marks omitted; omission in original). There is no basis to infer that the type of restraint AAPS alleges would be invalidated in all or almost all instances under the Rule of Reason and, as such, the *per se* rule is not appropriate in this case. *Id*. at 886–87; *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) ("[P]recedent limits the *per se* rule in the boycott context to cases involving horizontal agreements among direct competitors."); *Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Adver. Ass'n, Inc.*, 672 F.2d 1280, 1286 (7th Cir. 1982) ("[W]here the 'group boycott' under challenge does not involve a direct effort to influence the supply of, or demand for, a competitor's product, per se treatment may not be appropriate. . . . In the instant

case, plaintiff has made no showing that membership in the defendant Association is necessary (or even desirable) to compete effectively as a Datsun dealer.").

### 2. Rule of Reason

AAPS's claim also fails under the Rule of Reason analysis. "Substantial market power is an essential ingredient of every antitrust case under the Rule of Reason." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), *as amended on denial of reh'g* (Jan. 11, 1995). AAPS has not alleged facts sufficient to suggest that ABMS has sufficient market power to cause a restraint of trade. There are no factual allegations that ABMS's activities have cut back output in the market or driven up prices to consumers—particularly as ABMS certification is a voluntary process, failure to be certified does not render a physician unable to practice medicine. *Id*. (explaining that it is "hard to see how the [defendant psychiatric board's] activities could amount to an exercise of market power, which entails cutting back output in the market and thus driving up prices to consumers" where "plaintiffs already are sellers in the market for psychiatric services [and] turning down their applications for certification does not remove their output from the market and therefore does not raise prices to consumers") (internal citation omitted).

AAPS's proffered definition of the market as medical care provided by physicians to *hospitalized* patients nationwide (as opposed to simply medical care nationwide) does not save its claim—AAPS has not alleged that the MOC program is required by all (or even a significant portion of) hospitals nationwide.  Moreover, AAPS has alleged no facts showing that ABMS has the ability to control hospitals nationwide or coerce hospitals to force physicians to participate in the MOC program. In fact, AAPS's own words suggest the opposite—for example, according to AAPS, "[t]o comply with The Joint Commission's requirements, *many* hospitals impose *parts or*

8

*all* of the MOC program against physicians as a condition of having hospital medical staff privileges." (Compl. ¶ 15, Dkt. No. 1 (emphasis added).) Likewise, AAPS asserts that "The Joint Commission *does* require that all hospital department chairs be board certified *or otherwise complete the equivalence of the board certification*, and those department chairs can be *expected* to impose the same requirement on their staff." (AAPS Resp. at 12, Dkt. No. 36 (first emphasis in original).) Similarly, The Joint Commission document relied on by AAPS states that "[t]he hospital . . . establishes criteria that determine a practioner's ability to provide patient care, treatment, and services . . . [including] [c]urrent licensure *and/or certification, as appropriate*." (*Id*.; Dec. of Jakob Halpern in support of ABMS Mot. to Dismiss or Transfer at MS-28, Dkt. No. 11-8 (emphasis added).) That is, hospitals may or may not impose parts or all of the MOC program as a requirement for medical staff privileges, hospital chairs may or may not be board certified, and hospital criteria for physicians may or may not include certification. Thus, according to AAPS's own words, even working in supposed concert with The Joint Commission, ABMS has failed to force hospitals to require certification of its physicians by ABMS or a Member Board.[2] Accordingly, AAPS has not sufficiently pleaded that ABMS has caused a restraint of trade. *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 398 (7th Cir. 1989) (finding no restraint of trade when the organization alleged to have violated antitrust law had "no authority over hospitals, insurers, state medical societies or licensing boards, and other persons who might be able to govern the performance of surgery").

Nor has AAPS sufficiently pleaded that the alleged restraint is unreasonable. "[I]t is commonplace, and often very useful, for organizations to recommend quality standards . . . or

---

[2] AAPS's allegations regarding health insurers fare no better. According to AAPS, ABMS has worked "to induce health insurers to 'use Board Certification by an ABMS Member Board as an essential tool to assess physician credentials within a given medical specialty.'" (Compl. ¶ 16, Dkt. No. 1.) AAPS has not pleaded facts plausibly suggesting that ABMS has authority over any insurance companies sufficient to cause a restraint of trade.

adopt them as part of a certification process . . . . Merely to say that the standards are disputable or have some market effects has not generally been enough to condemn them as 'unreasonable' under the Sherman Act." *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 57 (1st Cir. 1999). More would be needed to conclude that any restraint is unreasonable, such as the use of standards setting as a predatory device by some competitors to injure others (for example, by "showing that the standard was deliberately distorted by competitors of the injured party . . . through lies, bribes, or other improper forms of influence, in addition to a further showing of market foreclosure."). *Id*. at 57–58.

### B. An Accompanying Injury

It is not sufficient for AAPS to allege any injury—AAPS must allege "injury of the type the antitrust laws were intended to prevent and that flows from that which makes [ABMS's] acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Because the purpose of the Sherman Act is to protect consumers from injury that results from diminished competition, AAPS "must allege, not only an injury to himself, but an injury to the market as well." *Agnew*, 683 F.3d at 335 (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)).

AAPS claims that ABMS's "actions injured and continue to injure competition by causing anticompetitive effects within the relevant market for services provided by physicians, thereby limiting patients' access to ***their own physicians***." (Compl. ¶ 65, Dkt. No. 1 (emphasis added).) This is not the type of injury protected by the antitrust laws. *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818, 825 (7th Cir. 1999) ("To recover under the antitrust laws, the plaintiff must show that its injury flows from that which makes the conduct an antitrust problem: higher prices and lower output.") AAPS has not alleged

any reduction in the output of medical care (*e.g.*, that patients have been denied treatment or were treated by unqualified doctors); nor has AAPS alleged that ABMS's actions have resulted in an increase in the cost of medical care. *Wagner v. Magellan Health Servs., Inc.*, 121 F. Supp. 2d 673, 681–82 (N.D. Ill. 2000).

AAPS also claims that a particular doctor, J.E.,[3] and other doctors have been harmed by being excluded from the medical staff of hospitals. (Compl. ¶¶ 29, 50, Dkt. No. 1.) However, "[t]he antitrust laws . . . were enacted for 'the protection of competition not competitors.'" *Brunswick*, 429 U.S. at 488 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)). There is no antitrust injury when the harm alleged is harm to the business of one competitor (or a group of competitors)—the injury must be to the market. *Frantzides v. Northshore Univ. HealthSystem Faculty Practice Assocs., Inc.*, 787 F. Supp. 2d 725, 732 (N.D. Ill. 2011). This is particularly true here, as ABMS's actions do not impact whether physicians are licensed to practice—*i.e.*, whether their services are available in the market; the impact is solely on whether physicians can offer their services in certain hospitals. *Sanjuan*, 40 F.3d at 251 (affirming district court's dismissal of antitrust claim, explaining that "[w]hen challenged, plaintiffs revealed that they want to show injury ***to producers***" and that "plaintiffs already are sellers in the market for psychiatric services; turning down their applications for certification does not remove their output from the market and therefore does not raise prices to consumers"). As AAPS admits, even for J.E., failure to comply with recertification requirements has not removed him from the market— he "continues to practice in good standing in New Jersey." (Compl. ¶ 48, Dkt. No. 1.)

\*\*\*

---

[3] J.E.'s exclusion from one particular hospital does not constitute an antitrust injury. *BCB Anesthesia Care, Ltd. v. Passavant Mem'l Area Hosp. Ass'n*, 36 F.3d 664, 669 (7th Cir. 1994) ("A staffing decision does not itself constitute an antitrust injury.").

For these reasons, AAPS has failed to state a claim for restraint of trade in violation of Section 1 of the Sherman Act and ABMS's Motion is granted with respect to Count I.[4]

## II. Count II – Negligent Misrepresentation

As the Court finds that AAPS has failed to state a claim for restraint of trade in violation of Section 1 of the Sherman Act, the Court need not reach the merits of AAPS's claim for negligent misrepresentation. *See* 28 U.S.C.A. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."). The Court may exercise its discretion to consider the merits of the claim, however, and does so here in the interests of judicial economy and in light of the ease of resolution of the claim. *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("[W]hile a district court may relinquish its supplemental jurisdiction if one of the conditions of § 1367(c) is satisfied, it is not required to do so. Supplemental jurisdiction is a doctrine of discretion, and its 'justification lies in considerations of judicial economy, convenience and fairness to litigants.'") (internal citations omitted).

To establish a claim for negligent misrepresentation,[5] AAPS must plead facts plausibly suggesting that: (1) ABMS made a false statement of material fact; (2) ABMS was careless or negligent in ascertaining the truth of the statement; (3) ABMS induced AAPS to act; (4) AAPS

---

[4] Because the Court finds that AAPS has failed to state a claim for restraint of trade in violation of Section 1 of the Sherman Act, it need not address ABMS's argument that AAPS has failed to plead sufficient facts to establish a conspiracy.

[5] The Complaint invokes the Court's supplemental jurisdiction as to AAPS's claim for negligent misrepresentation. (Compl. ¶ 7, Dkt. No. 1.) As this case was transferred to the Northern District of Illinois for improper venue pursuant to 28 U.S.C. § 1406(a), the choice of law rules of Illinois apply. *Koutsoubos v. Casanave*, 816 F. Supp. 472, 474–75 (N.D. Ill. 1993) ("[W]here an action was improperly filed in the transferor court, the transferee court should apply its own state's choice of law rules rather than those of the transferor's state.") In this case, however, the parties have not raised a conflict of laws issue, and the Court will apply Illinois law to the substantive aspects of AAPS's negligent misrepresentation claim. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir.) *reh'g denied,* 769 F.3d 535 (7th Cir. 2014) ("When no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law.").

acted in reliance on the truth of ABMS's statement; (5) AAPS's reliance caused it to suffer damages; and (6) ABMS had a duty to communicate accurate information. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833–34 (7th Cir. 2007). None of the statements identified in AAPS's Complaint comprise a "false statement of material fact." In fact, some of the statements—such as ABMS's use of phrases like "Not Meeting MOC Requirements" to describe physicians who do not participate in the MOC program and inviting patients to search the names of individual physicians to see if they have complied with the MOC program—are simply true statements.

The statements that are not simply true statements—such as a statement on an ABMS website that doctors who participate in the MOC program "are voluntarily part of a rigorous process that continually assesses and enhances their medical knowledge, judgment, professionalism, clinical techniques, and communication skills," and a statement on an ABMS website that "you can count on quality patient care" from doctors who are Board Certified —are expressions of opinion that cannot form the basis of a negligent misrepresentation claim. *Lagen v. Balcor Co.*, 653 N.E.2d 968, 973 (Ill. App. Ct. 1995) ("[T]he basis of a negligent misrepresentation claim must be a statement of fact; expressions of opinion are not actionable."); *cf. Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 692 N.E.2d 812, 816 (Ill. App. Ct. 1998) ("We hold that Arbor's comments regarding Farrell's intelligence, innovativeness and industrious nature represent mere opinion and, therefore, cannot form the basis of an action for fraudulent misrepresentation.").[6]

For these reasons, AAPS has failed to state a claim for negligent misrepresentation and ABMS's Motion is granted with respect to Count II.

---

[6] Because the Court finds that AAPS has failed to allege that ABMS made a false statement of material fact, it need not address AAPS's argument that ABMS has failed to allege reasonable reliance.

## CONCLUSION

For the foregoing reasons, the Court grants the Motion pursuant to Federal Rule of Civil Procedure 12(b)(6). The dismissal is without prejudice, however, and AAPS will be permitted an opportunity to file an amended complaint that cures the deficiencies discussed in this Memorandum Opinion.

ENTERED:

Dated: December 13, 2017

Andrea R. Wood
United States District Judge