**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ASSOCIATION OF AMERICAN PHYSICIANS & SURGEONS, INC.,** | ) ) | |
| | ) | **Civil Action** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 1:14-cv-02705-ARW** |
| | ) | |
| **AMERICAN BOARD OF MEDICAL SPECIALTIES,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## AMENDED COMPLAINT WITH CLASS ACTION

The Association of American Physicians & Surgeons, Inc. ("AAPS" or "Plaintiff") seeks, with class action, compensatory, declaratory and injunctive relief against the American Board of Medical Specialties ("ABMS" or "Defendant"), as follows:

## NATURE OF THE ACTION

1.     Plaintiff AAPS brings this class action to end antitrust law violations and deceptive trade practices by Defendant ABMS concerning its controversial "maintenance of certification" (MOC) product, which reduces the availability of physicians to patients. Specifically, Defendant ABMS has conspired with specialty board organizations, health insurers, and hospitals to compel physicians[1] to purchase and spend unjustified time and money on Defendant's proprietary ABMS Maintenance of Certification®.  ABMS has colluded to restrain trade by making substantial demands on physicians' time, and has acted to exclude physicians from the relevant market who do not purchase Defendant's

_____

[1] The term "physicians" in this Amended Complaint refers to those holding an "M.D." degree, which is the large category of medical professionals whom Defendant ABMS targets.

product or who do purchase it but are deemed not to have attained a passing grade. Defendant's product is a money-making scheme that reduces the output of hospital-based and insurance in-network physicians in violation of Section 1 of the Sherman Act.

2.      In addition, Defendant ABMS engages in deceptive trade practices, as ABMS "disparages the goods, services, or business of another by false or misleading representation of fact," in violation of 815 Ill. Comp. Stat. 510/2(a)(8). Specifically, Defendant misleadingly disparages physicians who decline to participate in Defendant's MOC program, by falsely implying that such physicians are of inferior quality to those who do purchase Defendant's product at substantial expense in time and financial cost.

3.      ABMS also falsely implies that its product has governmental or academic legitimacy, when it does not, and ABMS conceals how it arbitrarily exempts older physicians from purchasing and participating in its program. ABMS misleadingly implies that hospitals and insurance plans are incorporating certification requirements based on quality, when in fact ABMS itself covertly colludes with hospitals and insurers to impose its proprietary product.

4.      Defendant's imposition of its Maintenance of Certification® is so unjustified that multiple state legislatures have taken the extraordinary step of prohibiting the imposition of requirements based on it. Additional state legislatures are considering new bills to prohibit government, health insurers, and hospitals from requiring Defendant ABMS's Maintenance of Certification®. Such state legislation does not, however, enjoin Defendant's restraint of trade and deceptive trade practices, or compensate the victims of it.

5.      As summarized in a recent letter by Texas Medical Association President

Carlos J. Cardenas, M.D., which was published in the prestigious *Journal of the American Medical Ass'n (JAMA)*:

> [Board certifying societies] are … profit-driven organizations beholden to their own financial interests. The MOC process is too expensive, requires physicians to take too much time away from their patients and families, and, most importantly, lacks sufficient research to document the benefits to patient care. Many physicians say the information studied and tested has little applicability to their day-to-day practice.

*JAMA*, 2018:319(1), 83-84 (multiple supporting references omitted). *See also id.* at 84 (Washington University School of Medicine Professor of Surgery Bradley D. Freeman, M.D., explaining that MOC is an impediment to "enhanc[ing] both quality of care and professional satisfaction").

6.      AAPS seeks a refund of fees paid by members of the Class as defined below, and trebled compensatory damages under the Sherman Act for the injuries caused by ABMS.  AAPS also seeks injunctive and declaratory relief.

## THE PARTIES

7.      Plaintiff AAPS was founded in 1943 and is a nonprofit membership organization of physicians in virtually all specialties.  AAPS is incorporated under the laws of Indiana and headquartered at 1601 N. Tucson Blvd., Suite 9, in Tucson, Arizona. AAPS membership includes physicians practicing in Illinois.  Members of AAPS have been harmed by the ongoing antitrust violations by ABMS and by its deceptive trade practices.

8.      Defendant ABMS is a nonprofit entity incorporated in Illinois, where its headquarters are located in Chicago at 222 North LaSalle Street, Suite 1500.

## JURISDICTION

9.      This action arises under Section 16 of the Clayton Act, 15 U.S.C. § 26, to

secure equitable relief against a continuation of the violations by Defendant of Section 1 of the Sherman Act, 15 U.S.C. § 1, and under Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble the amount of damages incurred due to Defendant's violations. Interstate commerce for medical services is substantially affected by Defendant's conduct alleged herein. This court has subject matter jurisdiction here under 28 U.S.C. §§ 1331 and 1337(a).

10.    Supplemental jurisdiction over Plaintiff's additional claim for deceptive trade practices, under 815 Ill. Comp. Stat. 510/2, exists under 28 U.S.C. § 1367. In addition, this Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1332, because there is diversity of citizenship of the parties and the amount in controversy exceeds $75,000.00.

**VENUE**

11.    Venue is proper in this United States District Court for the Northern District of Illinois, under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b)(1), because Defendant resides here.

**STANDING**

12.    Members of Plaintiff AAPS have suffered injury in the form of thousands of dollars apiece in unjustified individual expense, their exclusion from insurance networks and hospital medical staffs, their reputational harm, and hundreds of hours taken away from each physician in his or her care of patients, due to the conduct and statements by Defendant ABMS as alleged herein. Plaintiff's requested declaratory and injunctive relief will prevent ongoing and imminent future injury. The protection of AAPS members from the antitrust violations and deceptive trade practices alleged herein

is central to AAPS's purpose of safeguarding the practice of private medicine against interference. In addition, AAPS has long advocated transparency and accountability to the public in the regulation of medicine, which is absent from Defendant ABMS's imposition of its immense burdens on the practice of medicine through agreements and concerted actions with other private organizations. Addressing Defendant's antitrust violations and deceptive trade practices does not require participation in this lawsuit by individual AAPS members.

## ALLEGATIONS RELEVANT TO ALL COUNTS

13. Defendant ABMS and 24 separate corporations have agreed to impose on physicians a recertification program called the ABMS Maintenance of Certification® (also known as "ABMS MOC®").

14. These 24 corporations, known as the "Specialty Boards," are:

The American Board of Allergy and Immunology, The American Board of Anesthesiology, The American Board of Colon and Rectal Surgery, The American Board of Dermatology, The American Board of Emergency Medicine, The American Board of Family Medicine ("ABFM"), The American Board of Internal Medicine ("ABIM"), The American Board of Medical Genetics, The American Board of Neurological Surgery, The American Board of Nuclear Medicine, The American Board of Obstetrics and Gynecology, The American Board of Ophthalmology, The American Board of Orthopaedic Surgery, The American Board of Otolaryngology, The American Board of Pathology, The American Board of Pediatrics, The American Board of Physical Medicine and Rehabilitation, The American Board of Plastic Surgery, The American Board of Preventive Medicine, The American Board of Psychiatry and Neurology, The American Board of Radiology, The American Board of Surgery, The American Board of Thoracic Surgery, and The American Board of Urology.

15. Defendant ABMS and the Specialty Boards have conspired to impose the ABMS MOC® program against all physicians having an "M.D." degree, with arbitrary exemptions for older physicians.

16. In addition, Defendant ABMS has conspired with health insurers and

hospitals to require physicians to purchase the ABMS MOC® product as a condition of being in health plan networks or having medical staff privileges, respectively.

17.     Defendant ABMS's collusion with health insurers and hospitals, as alleged in further detail below, constitutes an illegal agreement in restraint of a trade and an illegal "tying" of products and services under the Sherman Act.

### ABMS Conspiring with Health Insurers

18.     Defendant ABMS has conspired with health insurers having market power, in order to compel physicians to purchase the ABMS MOC® product.

19.     For example, Defendant ABMS publicly admits that it encouraged and obtained a commitment by the Blue Cross and Blue Shield Association ("BCBSA") to require physicians to purchase and participate in ABMS MOC® as a condition of physicians being in-network with health insurance plans.[2]

20.     This conspiracy between Defendant ABMS and BCBSA has proximately caused Blue Cross and Blue Shield-affiliated health plans in multiple states impose a requirement that physicians purchase and participate in ABMS MOC® as a condition of participating in their health insurance networks.

21.     For example, Blue Cross and Blue Shield of Massachusetts requires certification with ABMS or its Specialty Boards as a condition of physicians being allowed to participate in its health plan network.[3]

---

[2] http://managedhealthcareexecutive.modernmedicine.com/managed-healthcare-executive/content/bcbs-promotes-board-certification (viewed Dec. 30, 2017).

[3] https://provider.bluecrossma.com/ProviderHome/wcm/connect/4b31b15b-0edf-4571-9f98-7d2e83969c76/MPC_040517-1E_Credentialing_Recredentialing_Guidelines--prof.pdf?MOD=AJPERES (at p. 5, viewed Dec. 30, 2017).

22.     Similarly, in Pennsylvania, Independence Blue Cross now requires that physicians be board certified through Defendant ABMS, which also applies to some or all of the many subsidiaries of Independence Blue Cross, including Independence Hospital Indemnity Plan, Keystone Health Plan East, QCC Insurance Company, and Highmark Blue Shield. [4]

23.     In addition, Defendant ABMS has colluded with other groups to induce health insurers to "use Board Certification by an ABMS Member Board as an essential tool to assess physician credentials within a given medical specialty."[5]

24.     Most health insurers, particularly in metropolitan areas, require that physicians purchase and comply with Defendant's ABMS MOC® product as a condition of being in-network with the insurer.

### ABMS Conspiring with Hospitals

25.     Defendant ABMS has sought and obtained agreement by hospitals having market power, in order to enforce Defendant's ABMS MOC® product as a condition of holding medical staff privileges.

26.     The American Hospital Association ("AHA"), a trade association representing nearly all hospitals in the United States, is an associate member of Defendant ABMS and agrees with it to impose ABMS MOC® on physicians.

27.     In Defendant ABMS's "Portfolio Program™," ABMS explains its campaign to induce hospitals to impose the ABMS MOC® product as a condition of

---

[4] https://www.ibx.com/pdfs/providers/interactive_tools/credentialing_criteria_ibx.pdf (at p. 1, viewed Dec. 30. 2017).
[5] http://certificationmatters.org/faqs.aspx (viewed Jan. 4, 2018).

holding medical staff privileges.[6]

28.     Specifically, Defendant ABMS requires of hospitals as a condition of joining its Portfolio Program™ that the hospital agree and represent that it has "a willingness to commit necessary resources and consider MOC a requirement for medical staff privileges for eligible physicians."[7]

29.     Defendant ABMS induces agreement by hospitals and other organizations to its foregoing condition by expressly stipulating that those which "***cannot confidently answer 'yes' to all of the items … are unlikely to be approved for participation***."[8]

30.     Several hospitals are listed as "sponsors" of the ABMS Portfolio Program™, including Palmetto Health in Columbia, South Carolina.

31.     Approximately 80% of hospitals now require certification by ABMS as a condition for physicians to be on the medical staff, and outside of Texas and Oklahoma nearly all of those hospitals now require that physicians purchase and spend enormous time on the proprietary product of ABMS MOC® in order to have medical staff privileges.

**Restraint of Trade by ABMS MOC®**

32.     Defendant ABMS, the Specialty Boards, health insurers, and hospitals, by agreeing to impose burdensome recertification through ABMS MOC® as a condition of being in insurance networks and maintaining hospital medical staff privileges, reduce the output of medical services and increase the prices to consumers in the relevant market.

_____

[6] http://mocportfolioprogram.org/wp-content/uploads/2016/08/06_2016_Portfolio-Program_StandardsGuidelines.pdf (viewed Jan. 3, 2018).
[7] *Id.* at p.4, § 2.A.5.
[8] *Id.* at § 2.A (emphasis in original).

33.     For example, Defendant ABMS's foregoing agreements and actions caused the unjustified exclusion of a physician member of Plaintiff AAPS ("J.E.") from the medical staff at Somerset Medical Center ("SMC"), a hospital located in Somerville, New Jersey.

34.     Physician J.E. had been on the SMC medical staff to treat patients there for twenty-nine (29) years.

35.     In 2011, SMC refused to allow J.E. to continue to remain on its medical staff unless he purchased and complied with ABMS MOC®.

36.     Many physicians, such as AAPS physician member J.E., choose not to purchase and participate in ABMS MOC® because it would impinge on their time to spend caring for their patients, including their charity care.

37.     AAPS member J.E. had been fully certified in good standing with the predecessor to one of the 24 Specialty Boards, the American Board of Family Medicine ("ABFM").

38.     Defendant ABMS has agreed with ABFM and hospitals to impose the extensive burdens of ABMS MOC® on J.E. and other physicians.[9]

39.     Effective June 24, 2011, SMC excluded J.E. from its medical staff, due to Defendant ABMS's activities and agreements to impose its ABMS MOC® product.

40.     Like many other AAPS physician members, J.E. spends a substantial percentage of his time providing charity care to patients who would not otherwise have access to medical care.

41.     Yet because of Defendant ABMS's actions, patients are denied the benefit

---

[9] https://www.theabfm.org/moc/index.aspx (viewed Jan. 5, 2018).

of being evaluated and treated by J.E. when taken by emergency to SMC.

42.     Studies show that physicians typically lack enough time to spend any more than about 7 or 8 minutes on average seeing each patient.

43.     In addition, physicians are spending less time providing charity care because they have diminishing time to do so.

44.     The lifespan and professional career of a physician are shorter than that of most other professionals.

45.     Physicians spend more time in training than most other professionals.

46.     Despite this, the additional burdens on physicians' time imposed by the ABMS MOC® product is substantial, often exceeding 100 hours per year.

47.     For the average physician in clinical practice, that time burden takes the physician's availability away from more than 700 patient-visits per year.

48.     In general, the more patients that a particular physician sees and treats, the greater the interference in his practice that is imposed by ABMS MOC®.

49.     J.E. manages and works in a standalone medical charity clinic for a substantial part of each week.

50.     Requiring J.E. to purchase and spend hundreds of hours on ABMS MOC® would result in an hour-for-hour reduction in his availability to provide medical care to his many charity patients, who have far surpassed 30,000 patient visits in total number.

51.     Patients of J.E. are typically impoverished and lack any alternate means of obtaining comparable medical care.

52.     J.E. continued to serve his non-hospitalized charity patients rather than comply with the immense burdens of recertification demanded by Defendant's

agreements to implement ABMS MOC®.

53.     Defendant ABMS has entered into agreements with many of the Specialty Boards to impose even greater burdens of time and expense on physicians. According to an email sent to physicians by the American Board of Internal Medicine ("ABIM") on or about April 6, 2013, Defendant "ABMS is requiring more frequent participation in MOC of all board certified physicians."

54.     Defendant ABMS and its Specialty Boards fail a substantial percentage of physicians who do purchase and participate in ABMS MOC®, without even providing them with an opportunity to review and challenge the questions-and-answer choices that they purportedly responded to incorrectly.

55.     It is contrary to public policy for ABMS, as a private entity lacking in public accountability and transparency, to impose its own proprietary product as a condition for patients to have access to physicians in insurance networks and at hospitals.

56.     Defendant's ABMS MOC® program imposes far greater burdens than any analogous program in any other profession, and surveys demonstrate that an overwhelming majority of physicians – perhaps more than 90% – feel that Defendant's program is unjustified.

**Lack of Benefit to ABMS MOC®**

57.     There is no proven benefit to patient care from Defendant's ABMS MOC® product.

58.     Illustrating that ABMS MOC® is a money-making scheme unrelated to quality of care, at least one Specialty Board has offered ten years of recertification in exchange for a substantial cash payment, in lieu of an examination.

59.     Every State has one or more official medical boards authorized by law and accountable to the public, to determine the fitness of physicians to practice medicine, and yet none of them require purchase of or participation in ABMS MOC® as a condition of licensure.

60.     Several States, including Texas and Oklahoma, have even enacted laws prohibiting imposition of ABMS MOC® as requirements of physicians in various contexts.

61.     Academic physicians have been critical of the lack of benefits from maintenance of certification, observing that alternative uses of physicians' time are superior means of promoting quality of care.

62.     The lack of any genuine value of ABMS MOC® as a measure of professional skill or competence is demonstrated by how ABMS itself selected and appointed as its new President/CEO in 2012 someone who chose not to purchase and complete ABMS MOC®, and instead took advantage of an arbitrary exemption not available to most physicians.

**Lack of Safeguards Against Discrimination by ABMS MOC®**

63.     There are no meaningful safeguards in the ABMS MOC® product against unlawful discrimination in how it creates obstacles to the practice of medicine.

64.     Upon information and belief, the tests imposed pursuant to the ABMS MOC® program discriminate against women and minorities, failing a disproportionate percentage of members of those groups.

65.     Unlike the SAT and other nationwide examinations, Defendant ABMS does not release the results of its MOC examinations based on race and gender, in order

to mislead the public into believing that the MOC examinations are fair and unbiased.

66.     Defendant's ABMS MOC® product further discriminates against physicians in small, rural practices who see many patients, because they lack the extra time and support staff to allow diversion of the physicians' time for compliance with the burdens of Defendant's MOC.

## The Relevant Market

67.     The relevant service market consists of medical care provided by physicians who are subject to MOC, and who are either in-network, or seek to be in-network, with health insurers, or treat or seek to treat hospitalized patients.

68.     The relevant geographic market is nationwide except for States that have generally prohibited MOC requirements, as Texas has.

## Defendant ABMS's Pecuniary Interest

69.     Defendant and its Specialty Boards have a substantial pecuniary interest in requiring physicians to purchase their products in the ABMS MOC® program.

70.     The latest publicly available IRS Form 990 sets forth the self-enrichment by executives at Defendant ABMS and the Specialty Boards, which results in large part from their restraint of trade and deceptive trade practices:[10]

| Executive | "Nonprofit" Annual Compensation (including related organizations) |
|---|---|
| ABMS President (2015) | $774,054.00 |
| ABFM President (2015) | $1,105,148.00 |
| ABIM President (2015) | $849,483.00 |

---

[10] IRS Form 990s by nonprofit organizations are readily available to the public on the internet at multiple websites, including http:www.guidestar.org and http://foundationcenter.org/find-funding/990-finder .

ABMS Form 990 (2015), Part VII, Section A attachment, p. 1; ABFM Form 990 (2015), Part VII, Section A, p. 2; ABIM Form 990 (2015), Part VII, Section A attachment, p. 1.

71.     Defendant ABMS has acted with a pecuniary interest in persuading and coercing health insurers and hospitals to impose ABMS MOC.

## CLASS ACTION ALLEGATIONS

72.     Plaintiff brings these claims on behalf of a class (the "Class") defined as follows: all physicians in private practice who are in-network or seek to be in-network with health insurers or who treat or seek to treat patients in hospitals, and who are not exempt from the board certification burdens of ABMS and its above-listed Specialty Boards.

73.     **Numerosity.   FED. R. CIV. P. 23(a)(1).**  The Class members are so numerous that joinder of all is impractical.   The Class members total hundreds of thousands of physicians.

74.     **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).**  Common questions of law and fact exist and predominate as to all members of the Class. The common legal and factual questions include whether ABMS has improperly restrained trade under the Sherman Act and whether it has engaged in deceptive trade practices under Illinois law.

75.     **Typicality.  FED. R. CIV. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of each Class member.  Plaintiff has the same claims for injunctive relief that it seeks for all the class members.

76.     **Adequacy.    FED. R. CIV. P. 23(a)(4).**    Plaintiff is an adequate representative of the Class.  Plaintiff's interests are aligned with, and are not antagonistic

to, the Class. Plaintiff and its counsel intend to prosecute this action vigorously on behalf of the Class. Plaintiff's counsel will fairly and adequately protect the interests of the members of the Class.

77.     **Injunctive Relief Appropriate. FED. R. CIV. P. 23(b)(2).** Defendant ABMS's conduct as alleged herein applies generally to the members of the Class, such that final injunctive relief is appropriate with respect to the Class.

78.     **Predominance and Superiority. FED. R. CIV. P. 23(b)(3).** Questions of law and fact common to the Class predominate over questions affecting only individual members, and thus a class action is superior to other available methods for adjudication. Individual litigation would prove burdensome and expensive for the complex issues presented. It would be virtually impossible for Class members individually to redress effectively the wrongs done to them. Even if Class members could afford such individual litigation, it would be an unnecessary, time-consuming burden on the courts. A class action would benefit litigants and the Court by resolving individual claims in one proceeding, without the risk of inconsistent results.

## CAUSES OF ACTION

### COUNT I
**(Restraint of Trade in Violation of Section 1 of the Sherman Act)**

79.     Plaintiff AAPS incorporates herein all statements and allegations contained in this Amended Complaint.

80.     Defendant ABMS has unreasonably restrained trade by seeking and obtaining agreements with Specialty Boards, health insurers and hospitals to compel purchase by physicians of Defendant's ABMS MOC® product.

81.     Defendant ABMS has unreasonably restrained trade by inducing health

insurers and hospitals to exclude physicians who do not purchase and comply with ABMS MOC®, thereby reducing output and increasing prices for consumers.

82.    Defendant ABMS has further restrained trade by applying its ABMS MOC® to impose recertification on younger physicians while exempting older physicians, thereby increasing barriers to entry and reducing competition.

83.    Defendant's actions have no legitimate purpose, and reduce the output of medical services by physicians in the relevant market.

84.    Defendant's actions have been undertaken with a common design and understanding to exclude from the relevant market physicians, including members of Plaintiff AAPS and the Class, who choose not to spend time and money on Defendant's ABMS MOC® product.

85.    Defendant's actions have injured and continue to injure competition by causing anticompetitive effects within the relevant market for services provided by physicians, thereby reducing output and increasing prices to consumers.

86.    Defendant's foregoing conduct constitutes an unlawful tying agreement under Section 1 of the Sherman Act, where health insurers and hospitals having sufficient market power are induced by Defendant to require purchase of its product by physicians.

87.    Defendant's agreements and tying arrangements constitute a *per se* violation of Section 1 of the Sherman Act because they are plainly anticompetitive, tending to decrease the supply of medical services in the relevant market and reducing patient choice of physicians while increasing insurance premiums and other prices to consumers.

88.    In the alternative, Defendant's agreements and tying arrangements violate

Section 1 of the Sherman Act under the rule of reason, by unreasonably restricting the ability of members of Plaintiff or the Class to provide services in the relevant market, and reducing patient choice of physicians while increasing insurance premiums and other prices to consumers.

89.     Many thousands of physicians are deprived of time to provide care to their patients as a direct result of Defendant's foregoing restraint of trade, which thereby substantially and unreasonably injures competition in the relevant market.

90.     Members of AAPS and of the Class face imminent injury in the form of lost time and unrecoverable expense if Defendant ABMS is not enjoined.

91.     Patients themselves are highly unlikely to sue for their losses due to this antitrust violation, so there is no potential for duplicative recovery or complex apportionment of damages.

92.     Plaintiff AAPS seeks a declaratory judgment that Defendant has violated Section 1 of the Sherman Act.

93.     Plaintiff AAPS seeks an injunction against Defendant to prevent recurrence of its restraint of trade as alleged above.

94.     Plaintiff AAPS seeks a refund of fees paid by members of AAPS and of the Class in payment for Defendant's ABMS MOC® product, trebled under 15 U.S.C. § 15(a).

95.     Plaintiff AAPS further seeks compensation for injuries proximately caused to members of AAPS and of the Class by imposition of Defendant's ABMS MOC® product, trebled under 15 U.S.C. § 15(a).

96.     Plaintiff AAPS seeks attorneys' fees under Sections 4 and 16 of the

Clayton Act, 15 U.S.C. §§ 15, 26.

## COUNT II
### (Deceptive Trade Practices under 815 Ill. Comp. Stat. 510/2)

97.    Plaintiff AAPS incorporates herein all the foregoing statements and allegations.

98.    In clever but deceptive ways, Defendant publicly disparages physicians who decline to purchase the ABMS MOC® product.

99.    Disparagement in public of a physician is particularly harmful to his career, because health insurers, hospitals, and patients tend to avoid physicians who have any blemish on their reputation.

100.    Despite how there are no statutory or regulatory "requirements" to use ABMS MOC®, Defendant misleadingly disparages physicians who decline to purchase the ABMS MOC® product, by Defendant making statements like "Not Meeting MOC Requirements."

101.    Defendant invites the public to search on its website for individual physicians to check if they have complied with Defendant's ABMS MOC® product, while falsely implying that physicians who decline to purchase and comply with Defendant's product are somehow less competent.[11]

102.    Defendant's use of the word "Requirements" and similar terms misleads the public by obscuring that the proprietary ABMS MOC® product is, in fact, lacking in any legal, governmental, or academic requirement or oversight.

103.    Defendant's characterizations are as misleading as if Amazon.com posted on the internet the names of customers who declined to purchase its "Amazon Prime"

---

[11] https://www.certificationmatters.org/is-your-doctor-board-certified/search-now.aspx (viewed January 3, 2018).

product and described them as "Not Meeting Amazon Prime Requirements," or if Apple publicly posted the names of customers who declined to purchase its latest iPhone as "Not Meeting iPhone Requirements."

104.    Defendant also deceptively promotes its ABMS MOC® product as though health insurers and hospitals are independently requiring it of physicians, when in fact Defendant itself covertly arranges for health insurers and hospitals to impose Defendant's product on physicians.

105.    Defendant further deceptively implements and promotes its ABMS MOC® product by concealing how it discriminates against women and minorities, thereby misleading the public to think that it is a fair and impartial certification of quality.

106.    Several states, including Texas and Oklahoma, have passed laws to limit requiring use of ABMS MOC®, but Defendant fails to disclose this in response to inquiries from patients or entities.

107.    In addition, Defendant withholds from the public that it arbitrarily exempts many thousands of physicians from its "MOC Requirements," and yet deceptively conceals how arbitrary its exemptions are, while disparaging physicians who are not considered by Defendant to be exempt.

108.    Defendant's ABMS MOC® program is designed primarily to increase the revenue to ABMS and its Specialty Boards, and increase the compensation to their executives, rather than engage in any genuine attempt to improve quality of care for patients.

109.    Many of the questions asked of physicians as part of Defendant's ABMS MOC®, for which physicians must provide Defendant's preferred answer choices in

order to be recertified, have no relevance to the quality of care that the physician provides, and there is no meaningful academic or governmental oversight, public accountability or transparency as to whether the answer choices considered "correct" by Defendant are actually the best answers.

110.     Defendant misleadingly emphasizes the term "Board" to falsely imply that it has some authority akin to an official state medical board, when in fact Defendant and its co-conspirators lack any official legitimacy.

111.     Defendant has engaged in deceptive trade practices by its above-alleged conduct and by falsely pretending that its ABMS MOC® product accurately measures the medical skills and competence of practicing physicians.

112.     Members of the Class and Plaintiff AAPS have been directly and proximately injured due to Defendant's above-alleged conduct.

113.     Defendant intends that physicians, patients, insurance companies, and hospital administrators rely on Defendant's deception.

114.     Defendant's deception occurs in the course of conduct involving trade or commerce.

115.     Defendant willfully engages in its foregoing deceptive trade practices.

116.     Defendant's foregoing actions, including its practices alleged above in Count I for restraint of trade, constitute a violation of 815 Ill. Comp. Stat. 510/2.

117.     Members of AAPS and members of the Class have been injured by Defendant's foregoing actions.

118.     Plaintiff AAPS seeks an injunction ordering Defendant to cease and desist making deceptive statements and omissions about its ABMS MOC® program, including

the deceptive statements and omissions identified above.

119.    Plaintiff AAPS seeks an order compelling Defendant ABMS to refund the fees and expenses paid by members of AAPS and of the Class for participation in Defendant's ABMS MOC® program, which exceed $75,000.

120.    Plaintiff AAPS further seeks compensation for injuries proximately caused to members of AAPS and of the Class by imposition of Defendant's ABMS MOC® product, which also exceed $75,000.

121.    Plaintiff AAPS seeks reasonable attorneys' fees.

**WHEREFORE, Plaintiff AAPS prays**:

<u>As to Count I</u>

That this Court adjudge and decree that Defendant has engaged in an unlawful conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, that Defendant cease and desist from seeking any reliance by health insurers and hospitals on Defendant's ABMS MOC® as a measure of quality, that any agreements entered into by Defendant to implement, compel, or require ABMS MOC® are declared null and void, that Defendant refund treble fees it has received directly or indirectly from members of AAPS and the Class in connection with the ABMS MOC® as well as treble damages Defendant has proximately caused them, that Plaintiff recover reasonable attorneys' fees and costs of this suit, and such other relief as the Court may deem appropriate.

<u>As to Count II</u>

That this Court adjudge and decree that Defendant has engaged in deceptive trade practices concerning its ABMS MOC®, that Defendant cease and desist making deceptive statements in promoting it, that Defendant take down from its websites all

statements that disparage in any way physicians who decline to participate in its ABMS

MOC® program, that Defendant cease and desist identifying publicly which physicians

have purchased or complied with its ABMS MOC® program and which have not, that

Defendant prominently disclose its exemptions in connection with any statement about

compliance with its ABMS MOC® program, that Defendant refund fees it has received

directly or indirectly from members of AAPS and of the Class in connection with ABMS

MOC® as well as the proximate damages it has caused to them, that Defendant pay for

Plaintiff's reasonable attorneys' fees and costs of this suit, and such other relief as the

Court may deem appropriate.

## <u>DEMAND FOR A JURY TRIAL</u>

Plaintiff hereby demands a jury trial pursuant to FED. R. CIV. P. 38(b) for all

issues triable by jury.

Dated: January 16, 2018   Respectfully submitted,

<u>s/ Andrew L. Schlafly</u>

Andrew L. Schlafly (NJ 040662003)
Attorney at Law
939 Old Chester Rd.
Far Hills, NJ 07931
Phone: (908) 719-8608
Fax: (908) 934-9207
Email: aschlafly@aol.com

Zachary M. Bravos
Bravos & DiCola
600 W. Roosevelt Rd. - Suite B1
Wheaton, IL 60187
Phone: (630) 510-1300

Attorneys for Plaintiff
Association of American Physicians &
Surgeons, Inc. (AAPS)

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 16, 2018, I electronically filed the foregoing document with the Clerk of this Court by using the CM/ECF system, and understand that service on counsel for all parties will be accomplished through the CM/ECF system.

<u>/s/ Andrew L. Schlafly</u>
Andrew L. Schlafly
